DONALDSON, Judge.
One element an invitee must establish to recover against a property owner for an injury caused by the defective condition of the property is that the property owner had actual or constructive notice of the defective condition. Clayton v. Kroger Co., 455 So.2d 844, 845 (Ala.1984). Ruth Russell appeals from a summary judgment entered by thé' Lee Circuit Court' (“the trial court”) in favor of East Alabama Health Care Authority d/b/a'East Alabama Medical Center (“EAMC”) with respect to claims of negligence and wantonness arising from alleged injuries Russell sustained on premises owned by EAMC. On appeal, Russell contends that’the trial court incorrectly détermined that EAMC had not engaged in spoliation of evidence and that Russell had not presented substantial evidence to' overcome a summary judgment. We affirm the- judgment.

Fads and Procedural History

EAMC is a hospital located in Opelika owned and operated by the East Alabama Health. Care Authority. On the date of the incident described in further detail below, EAMC .had a functioning video-surveillance- system monitoring various parts *1172 of its premises, including the entrance to the lobby. The lobby of EAMC also had a rug located near the entrance.
On August 5, 2011, Russell traveled from Dadeville to Opelika with three family members, Necole Edwards, Jeffrey Earl Edwards, and Brittney Blackwell, for the purpose of visiting Russell’s daughter who was a patient at EAMC. As Russell entered the building, she crossed over the rug located in the lobby, lost her balance, and fell. Security personnel employed by EAMC assisted Russell after she fell. Russell received emergency medical treatment at EAMC for her injuries. Russell alleged that as a result of the fall she suffered a fractured wrist, a fractured pelvis, physical pain and suffering, emotional distress and-mental anguish, and permanent partial disability in her pelvis.
On July 26, 2013, Russell filed a complaint in the trial court alleging claims of negligence and wantonness against EAMC. Russell alleged that she had been an invitee on EAMC’s premises on August 5, 2011, when she fell. . Concurrent with the filing of her complaint, Russell propounded discovery requests to EAMC, including requests for production of documents and other materials. One of the requests was for “a copy of all photographs, films, videotapes, diagrams, x-rays., reproduction, models or other evidence relating to the incident or the Plaintiffs .injuries, treatment and/or damages as a result of the incident that was alleged in the complaint or any amendments thereto.” On August 20, 2013, EAMC filed an answer denying the allegations of Russell’s complaint. On September 13, 2013, EAMC responded to Russell’s aforementioned discovery request, stating that “[EAMC] will produce a copy of [Russell’s] medical chart.” EAMC did not specifically respond to the request for videotapes.
On June 27, 2014, EAMC filed a motion for a summary judgment. EAMC attached as evidence in support of its - arguments in the motion the deposition testimony of Russell, Necole Edwards, Jeffrey Earl' Edwards, and Blackwell. EAMC also submitted thé affidavit of Greg Nichols, the vice president of operations and facilities of EAMC. Nichols testified that he was in charge of security at EAMC at the time of Russell’s fall. Nichols testified that EAMC was not made aware of any problem, defect, or dangerous condition of the rug on August 5, 2011, stating in his affidavit as follows:
“Ms. Russell’s fall occurred on August 5, 2011. No defect, problem or dangerous condition of the front lobby rug or other premises was reported to EAMC by Ms. Russell or any of her family members on August 5, 2011, before, at the time of, or after her fall. No defect, problem, or dangerous condition of the rug or other premises was reported by 'any EAMC personnel on August 5, 2011, before, at the time, or after her fall.”
Nichols also testified via affidavit that
“EAMC’s Security personnel continually inspect and police the lobby area, including the rugs and mats, for any hazardous conditions. Moreover, EAMC personnel in all departments report any hazardous conditions on the premises if observed. On August 5, 2011 no EAMC security, maintenance, housekeeping or other employee reported observing any problem, defect or dangerous condition of the rugs at the front entrance to the lobby. Likewise, on August 5, 2011, no patient or visitor at EAMC reported any problem, defect or dangerous condition of the rugs at the front entrance to the lobby.”
Russell testified in her deposition that, as she was walking over the rug, something caught onto her' right foot.- -She *1173 testified that she lost her balance and that she fell. Under questioning from EAMC’s counsel, she testified as follows:
“Q. Did you see any dangerous condition in the rug?
“A. No, sir.
“Q. Did you notice any defect in the rug?
“A. No, sir. I just looked down and didn’t see anything and kept walking. I did not see anything. No, sir, I didn’t.
“Q. What about the rug caused you to fall?
“A. I don’t know, sir.
“Q. You don’t know that it was crumpled up or folded over or anything like that?
“A. No, sir.
“Q. You don’t know that it was bunched up or had an object on it or— was wet or anything like that?
“A. No, sir.
“Q. You just don’t know?
“A. No, sir.
“Q. You saw the rug, though?
“A. Yes, sir.
“Q.. You just didn’t see anything wrong with the rug?
“A. Yes, sir.
“Q. You didn’t see anything to where you could identify what caused you to fall?
“A. No, sir.
“Q. You cannot identify what caused you to fall, can you?
“A. No, sir.
“Q. Was anything obscuring your view — what I mean was anything obscuring or blocking your view of the rug or your view of the entryway into the hospital?
“A. No, sir.
“Q. So you had a clear view?
“A. Yes, sir.
[[Image here]]
“Q. Did you notice any problem, defect, or dangerous condition to the rug at any time after you fell?
“A. No, sir.
“Q. Did anybody tell you that they saw a problem or a defect or a dangerous condition about the rug after you fell?
“A. No, sir.
“Q. No one — scratch that. Has anyone told you at any time since then that they noticed a dangerous condition or a problem or defect with the rug?
“A. No, sir.
“Q. Have you come to learn at any time through any means of there being a dangerous condition or a problem or defect with the rug?
“A. No, sir.
“Q. So sitting here today, are you able to identify any problem with the rug?
“A. No, sir.
“Q. Are you able to identify any defect with the rug?
“A, No, sir.
“Q. Are you able to identify any dangerous condition that you walked on?
“A. No, sir.
“Q. Are you able to identify what it was about the rug that caused you to fall?
“A. No, sir.
“Q. Do you have any evidence at all of what about the rug caused you to fall?
“A. No, sir.
“Q. Are you — is it your contention and your allegation in this case that then simply the mere presence of the rug caused you to fall?
“A. It — yes, sir.”
*1174 Russell’s family members testified that they did not witness Russell fall. Necole Edwards and Jeffrey Earl Edwards testified that they did not notice any dangerous condition -with the rug and did not see whether it had been folded over. Blackwell, however, testified that she had crossed over the rug before Russell and that slie noticed that “the rug was kind of folded” and that the rug “was not folded backwards. It was like a lump.”[1] Under questioning of EAMC’s counsel, Blackwell testified at her deposition as follows;
“Q. So you’re saying there was lump in the rug close to the door threshold?
“A. Yes,
“Q. And you saw it?
“A. Yes, sir,
“Q. Was it easily observable?
“A. No. If I had seen it, I wouldn’t have tripped over it. I was just walking, You couldn’t see it.”
The trial court conducted a hearing on ■EAMC’s motion for a summary judgment on August 18, 2014. The trial court also apparently held a pretrial conference before ruling on EAMC’s motion for a summary judgment. An order, of-the trial court dated September 9, 2014, indicates that Russell requested leave of court to address an allegation concerning spoliation of evidence. The trial court granted the parties time to brief that issue. On September 16, 2014, Russell submitted a brief to the trial court alleging that EAMC had failed to disclose in its responses to discovery requests that EAMC had captured a “videotape” of Russell’s accident via its video-surveillance system. Russell argued that, at the hearing on ÉAMC’s motion for a summary judgment, EAMC first disclosed the existence- of the video-surveillance system. Russell argued that EAMC had erased the “videotape” after the fall and that EAMC had done so knowing that the video recording depicted Russell’s fall. Russell argued that EAMC had actual knowledge of' Russell’s fall so as to put EAMC on notice that the video recording of the incident should be preserved. Russell' argued that 'EAMC, instead, had erased the video recording and that EAMC had doné so with actual knowledge of what the video recording represented and with knowledge that a fall had occurred. Russell pointed out. that Nichols had failed to mention the video recording in his affidavit in support of EAMC’s motion for a summary judgment. Ultimately, Russell contended that EAMC’s motion for a summary judgment should be denied and that the issue of spoliation of .the video recording should be submitted to a jury.
EAMC submitted a reply brief on the issue of spoliation, in which it disputed Russell’s contentions that it had concealed and destroyed a video recording of Russell’s fall. EAMC contended that its responses to Russell’s discovery requests were accurate because it was‘not in possession of any video recordings of the incident at the time of the responses. EAMC attached to its brief another affidavit of Nichols. Nichols testified that, on the date of the fall, EAMC had .video-surveillance system with multiple cameras that connected to a digital video recorder (“DVR”) that captured and stored video from the various surveillance cameras stationed on EAMC’s premises. He stated *1175 that one of the cameras is pointed into the main lobby of EAMC. He testified that when the DVR reaches its maximum storage capacity, the DVR records over the old data, “resulting in the new video data replacing the old [data] on the DVR.” Nichols further testified as follows:
“7. The video surveillance camera in the front lobby,is.and was on August 5, 2011 in the regular and ordinary course of business attached to a DVR with a storage capacity of 320 GB. The DVR connected to the surveillance camera at the lobby stores the lobby video feed for approximately 40 days. Other DVRs connected , .to other video cameras throughout the hospital premises temporarily store video data for various time-frames depending on the storage capacity of the DVR. Some of the other DVRs store video data for up to approximately six months of video feed. All of, the video surveillance and DVR temporary storage explained herein is performed in the regular and ordinary course of business at EAMC.
“8. Video data on the DVRs at EÁMC can be manually saved to a hard drive in order to permanently save the video data or create a videotape. ■ If EAMC receives a request to save video, or if notice of a claim is provided or a lawsuit is filed, relevant existing video is permanently copied to a hard drive in this manner.
[[Image here]]
“10. The DVR to Which the front lobby surveillance camera is connected stores video feed for approximately 40 days, as explained above.. No video of the front lobby on August 5, 2011 was saved, and no videotape was ever created. Likewise, no video of Ms. Russell’s fall was ever erased or destroyed, rather the video feed from August 5, 2011 was recorded over by new video feed, and no
■longer contained on the DVR, by approximately mid-September, 2011, in the regular and ordinary course of business at EAMC.
“11. EAMC received a letter from [Russell’s, counsel] dated July 24, 2012, in which [he] stated that Ms. Russell was making a claim arising out of her fall at the front entrance to the EAMC lobby...'. [The] letter is dated over eleven (11) months after Ms. Russell’s fall,!;and was received by EAMC over ten (10) months after the video data from the front lobby surveillance camera was recorded over on the DVR attached to the lobby video surveillance camera in the regular course of business. [The] letter' is the first notice received by EAMC of a claim being made by Ms. Russell. [The] letter did not include a request to preserve any video[;] however if such á request had been made, the video data could not have been preserved because it had' been recorded over in the regular and ordinary course of business as explained above.”
On September 24, 2014, the trial court entered an order granting EAMC’s motion for a summary judgment. In that order, the trial court determined that Russell had “failed to provide substantial evidence that a defect existed in the rug in question that caused [her] to fall.” The trial court also concluded that Russell had not produced “substantial evidence that EAMC erased any video footage to keep it from being used as evidence.” On October 24, 2014, Russell filed a notice of appeal to this court. This court transferred the appeal to the supreme court for lack of subject-matter jurisdiction. The supreme court transferred the case to this court, pursuant to § 12-2-7, Ala.Code 1975. On appeal, Russell contends that ‘the summary judgment was improper because, she contends, (1) the trial court incorrectly determined *1176 that EAMC had not engaged in spoliation of evidence and (2) she produced substantial evidence of a genuine issue of material fact to prevent a summary judgment from being entered in favor of EAMC.[2]

Standard of Review

“This Court’s review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So.2d 72, 74 (Ala.2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 952-53 (Ala.2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant. Wilson v. Brown, 496 So.2d 756, 758 (Aa.1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce ‘substantial evidence’ as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989); Ala.Code 1975, § 12-21-12. ‘[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ West v. Founders Life Assur. Co. of Fla., 547 So.2d 870, 871 (Ala.1989).”
Dow v. Alabama Democratic Party, 897 So.2d 1035, 1038-39 (Ala.2004).

I. Spoliation of Evidence

Russell contends that the summary judgment was improper because she was entitled to a determination that EAMC spoliated evidence by “destroying” the video recording of her fall. Russell contends that evidence of EAMC’s alleged spoliation would be admissible as an implied admission of EAMC’s negligence. EAMC contends that the video recording was destroyed in the regular course of business and that Russell has failed to satisfy her burden to show that EAMC’s actions amount to spoliation of evidence.
“Spoliation is an attempt by a party to suppress or destroy material evidence favorable to the party’s adversary. May v. Moore, 424 So.2d 596, 603 (Ala.1982). Proof of spoliation will support an inference of guilt or negligence. May, 424 So.2d at 603. One can prove spoliation by showing that a party purposefully or wrongful!y destroyed a document that the party knew supported the interest of the party’s opponent. Id."
Wal-Mart Stores, Inc. v. Goodman, 789 So.2d 166, 176 (Ala.2000).
In Walker v. City of Huntsville, 62 So.3d 474, 495 (Ala.2010), our supreme court held:
“In Vesta [Fire Insurance Corp. v. Milam & Co. Construction, Inc., 901 So.2d 84 (Ala.2004)], this Court applied the standards [regarding a spoliation claim] and, as part of a detailed analysis, stated:
“ ‘The defendants do not argue that Vesta and Wausau acted with malicious intent in deciding what evidence to preserve, and the record, when *1177 viewed most favorably to ¡Vesta and Wausau ... reflects at most honest error in judgment and/or simple negligence. There is no showing that they allowed evidence that they knew, or should have known, would be favorable to the opposing parties in foreseeable litigation to be discarded. Classic spoliation involves the idea that the offending party “purposefully and wrongfully” destroyed evidence “he knew was supportive of the inter‘est of his opponent.” ’
“901 So.2d at 96 (quoting May [v. Moore], 424 So.2d [596,] 603 [ (Ala.1982) ]). Nothing in this language suggests the availability of an inference contrary to the alleged spoliator on the issue of liability when the loss or destruction of the evidence is shown to be merely an act of negligence inconsistent with the standards of conduct expected of a reasonable person acting under similar circumstances.”
Accordingly, we must determine whether there was sufficient evidence to find that EAMC’s recording over the August 5, 2011, video amounted to willful and purposeful destruction of evidence and whether it knew, or should have known, that the video would have been supportive of Russell’s interest in foreseeable litigation.
Russell has cited no authority, and this court is not aware of any authority, requiring a property owner to preserve video-surveillance recordings simply because an invitee suffered an injury on its premises and the property owner rendered assistance to the invitee. Additionally, there is insufficient evidence that EAMC had knowledge that there was a threat of litigation when it recorded over the video in question. The undisputed evidence shows that Russell first notified EAMC that she was pursuing a claim for personal injury via a letter from her counsel dated July 24, 2012, which was 11 months after her fall. Furthermore, EAMC presented Nichols’s testimony that the video recording of August 5, 2011, was recorded over in the ordinary course of EAMC’s business in mid September 2011, several weeks after the fall. We conclude that, under the facts of this case, there is insufficient evidence to support a finding that EAMC engaged in the willful or purposeful destruction of evidence that it knew or should have known was supportive of Russell. We also note that Russell fails to establish what evidence the video recording would have shown that would have been favorable to Russell. The trial court correctly determined that Russell failed to present substantial evidence to establish that EAMC had engaged in spoliation of evidence.

II. Summary Judgment

Russell also contends that the summary judgment was improper because Blackwell’s testimony that she walked across the rug shortly before Russell and that she noticed there was a lump in the rug presented a genuine issue of material fact as to EAMC’s negligence and wantonness. Neither party disputes that Blackwell was an invitee on the premises of EAMC. "
“To recover in a premises-liability action based on a fall, a plaintiff must prove (1) that her fall was caused by a defect or instrumentality located on the defendant’s premises, (2) that the fall was the result of the defendant’s negligence, and (3) that the defendant had or should have had notice of the defect or instrumentality before the accident. Logan v. Winn-Dixie Atlanta, Inc., 594 So.2d 83, 84 (Ala.1992). An owner of the premises is not an insurer of the safety of his invitees, and the doctrine of res ipsa loquitur is not applicable. Ex parte Mountain Top Indoor Flea Market, Inc., 699 So.2d 158 (Ala.1997). No pre *1178 sumption of negligence arises out of the mere fact of an injury to the invitee. Id.”
Ervin v. Excel Props., Inc., 831 So.2d 38, 41 (Ala.Civ.App.2001). Furthermore,
“In order to overcome a defendant’s properly supported summary-judgment motion, the plaintiffibears the burden of presenting substantial evidence as to each disputed element-of her claim. See Ex parte Atmore Community Hosp., 719 So.2d 1190 (Ala.1998); Mann v. Bank of Tallassee, 694 So.2d 1375 (Ala.Civ.App.1996).”
Ex parte Harold L. Martin Distrib. Co., 769 So.2d 313, 314 (Ala.2000). “Actual or constructive notice of the presence of the offending substance or condition must be proven before the proprietor can be held responsible for the, injury.” Clayton v. Kroger Co., 455 So.2d at 845.
Russell contends that Blackwéll’s testimony regarding a “lump” in the rug establishes a question of material fact as to whether EAMC had actual or constructive notice of á defective condition of the rug. EAMC, however, submitted testimony indicating that it had no knowledge of any defective condition of the rug.
The facts of this case are similar to those in our supreme court’s decision in Clayton, supra. In Clayton, the plaintiff tripped and fell over a raised floor mat located at thé entrance of a grocery store. 455 So.2d at 845. The plaintiff sued the grocery Store for’ damages for her personal injuries resulting from the fall. The trial court entered a judgment as a matter of law in favor of the grocery store. Id. Our supreme court-noted, that the plaintiff had presented1 no evidence to show that the grocery store “caused the mat to be wrinkled or knew that it was wrinkled.” Id. Ultimately, our supreme court determined that there was “no evidence which would establish any negligence on the part of [the grocery store] which proximately caused the accident and injuries sustained.” Id.
Likewise in the present case, even viewing the evidence in a light most favorable to Russell, Blackwell’s testimony of what she observed immediately before Russell fell would not permit the fact-finder to infer -that EAMC knew or should have known that the rug- was in a defective condition. Therefore, there were no genuine issues of material fact regarding a factor Russell had to prove to prevail on •her claim against EAMC, and the summary judgment was properly entered in favor of EAMC.
Because we are. affirming the trial court’s summary judgment on the basis that Russell failed to present substantial evidence that EAMC knew or should have known about a dangerous condition with the rug, we need not address EAMC’s argument that Russell failed to present substantial evidence that the lump in the rug caused her to fall and that Russell’s claims were based on speculation and conjecture.
Accordingly, the judgment entered in favor of EAMC is affirmed.
AFFIRMED.
THOMPSON, P.J„ and PITTMAN, THOMAS, and MOORE, JJ., concur.

. Blackwell’s1 testimony is inconsistent with the other witnesses’ testimony concerning the sequence in which they entered the hospital, Blackwell testified that she entered the hospital first, that Russell followed her, and that Necole Edwards and, Jeffrey Earl Edwards followed Russell. Russell, Necole Edwards, and Jeffrey Earl-Edwards testified that Russell was the first to enter the hospital and that Blackwell entered the hospital at the same time as Necole Edwards arid Jeffrey Earl Edwards.

. In her brief on appeal, Russell chiefly argues the issue concerning the allegation of spoliation of evidence. However, Russell also contends in her brief that the summary judgment was improper because, she argues, there also exists a genuine issue of material fact. Therefore, we will address both issues independently.