145 So. 651

CONNECTICUT GENERAL LIFE INS. CO. v. SMITH.

2 Div. 5.

Supreme Court of Alabama.

Dec. 15, 1932.

Rehearing Denied Jan. 27, 1933.

H. A. & D. K. Jones, of Tuscaloosa, for appellee.

T. B. Ward and J. M. Ward, both of Tuscaloosa, for appellant.

BROWN, J.

This is an action of assumpsit by the mortgagee of farm lands known as the Strudwick plantation in Hale county, Ala., who on de-

fault in the payment of the mortgage debt, foreclosed and purchased the plantation at the foreclosure sale, against the assignee of rent notes executed by the tenants of said plantation to the personal representative of one of the mortgagors, for the rents accruing during the year 1930.

The complaint consists of the common counts, including the count for money had and received, and two special counts stating in detail the facts upon which the plaintiff relies to sustain its cause of action.

The court sustained demurrer to the special counts, and the parties proceeded with the trial on the common counts and the plea of the general issue, pleaded in short by consent with leave to give in evidence any matter of special defense.

■ If plaintiff was entitled to recover, it was for money had and received, and the facts alleged in the special counts were admissible under the common count for money had and received; therefore, the ruling of the court on the demurrer, if error, was without injury.

The case was submitted on a stipulation of facts, documentary evidence and testimony given ore tenus, and at the conclusion of the evidence the court directed a verdict for the defendant by giving the general affirmative charge at his request, and refused a like charge requested in favor of the plaintiff.

The facts as developed by the evidence, so far as deemed material, are as follows: The mortgage on the plantation was executed on the 15th day of January, 1920, and duly recorded in the office of the judge of probate of the county in which the lands were situated, on January 21, 1920. The indebtedness secured by the mortgage matured on January 1, 1930, and, default being made, the mortgagee exercised and executed the power of sale, and foreclosed on the 18th day of August, 1930, purchased at the foreclosure sale, and received a foreclosure deed, duly executed and recorded on August 18, 1930. Notice of the foreclosure sale was given by publication in the "Greensboro Watchman," a newspaper published at Greensboro, Hale county, Ala.

During the month of January, 1930, Mrs. Battle Searcy, as executrix of the last will of W. F. Strudwick, deceased, let to fifteen tenants several parcels or tracts of said plantation and took from each a note for the rent due and payable October 1, 1930, said notes payable to the executrix in her representative capacity, aggregating $2,025.

On March 27, 1930, Mrs. Searcy as executrix obtained from the First National Bank of Tuscaloosa a loan of $1,100, executing her note therefor payable October 1, 1930, and pledged as collateral to secure said loan, "rent notes aggregating $2,025.00 as per list attached," with power of sale at maturity of the note in satisfaction of the indebtedness represented by said note or any other indebtedness due from the maker. The money borrowed by the executrix was used in purchasing fertilizer which was advanced by her as landlord to her several tenants, and was used by them on their respective crops on said plantation.

On May 15, 1930, the First National Bank of Tuscaloosa made a loan of $500 to the defendant Smith, on note signed by Mrs. Searcy in her representative capacity and individually as surety, and Smith used this money together with other funds in advancing to the tenants on said plantation, and said tenants each executed to Smith a mortgage on their respective crops to secure the payment for such advances respectively made to them.

On November 4, 1930, default being made in the payment of said two last-mentioned notes, the bank, in pursuance of the power of sale given in the first of said notes, sold the rent notes pledged as collateral, and defendant Smith became the purchaser thereof, paying therefor the sum of $1,610.14, and the bank transferred and assigned said notes to him, without recourse.

Incident to the last-mentioned transaction, by agreement between Mrs. Searcy and the defendant Smith, in consideration of Smith bidding for and purchasing said collateral notes at an amount sufficient to satisfy the indebtedness due by the executrix to the bank, she transferred and assigned to Smith her accounts against her tenants for the fertilizer furnished by her to said tenants, which amounted to $1,295.08, and the landlord's lien arising therefrom.

The aggregate of the indebtedness due from all of said tenants to Smith, not including the sums due for fertilizer, was $2,728.34, secured by the tenants' mortgages.

The defendant received from said tenants 91⅝ bales of cotton of the value of 7½ cents per pound, and 12 bushels of corn of the value of $6.

The indebtedness due from one of said tenants, Henry Bell, was paid by one Taylor, and the papers of said tenant were transferred by Smith to Taylor. The amount of this indebtedness does not appear.

On August 23, 1930, the plaintiff through its attorney made written request of Mrs. Searcy, as executrix, to notify all of said tenants that it was claiming the rent under the mortgage and its foreclosure, and in response thereto she advised that the rents for the current year at the time of the foreclosure were vested in the First National Bank of Tuscaloosa, and asserted her right to so dispose of said rents.

On August 18, 1930, the plaintiff gave written notices to each of said tenants that it became the owner of said plantation on said date by a foreclosure of its mortgage with

notice and demand to pay the rent to plaintiff. Said tenants failed or refused to attorn by recognizing the plaintiff as landlord, and it received no rents from any one.

Demand in writing was made by plaintiff, through its attorney, on the defendant Smith for the payment to it of all sums received by him as rent.

There was no evidence offered showing the weight in pounds of the 91⅝ bales of cotton, nor was any evidence offered showing or tending to show that Smith had sold or disposed of said cotton and corn, or that he had mixed and mingled it with other property of like character so as to destroy its identity.

■ There was no affirmative evidence other than the recital in the notes given by the executrix to the bank, showing that the bank and Smith had notice that the notes pledged as collateral were for rent of the Strudwick plantation; but we have no hesitancy in holding that the evidence clearly authorized an inference that Smith and the bank had knowledge or notice that said collateral notes represented sums of money to become due for rent of said plantation for the year 1930, and this with the due recordation of the real estate mortgage was sufficient to require the submission of the issues of fact to the jury, on the question as to whether the bank and Smith were purchasers of said notes with notice. Bott, Surv. Part., etc., v. McCoy & Johnson, 20 Ala. 578, 56 Am. Dec. 223; Etheridge v. Malempre, 18 Ala. 565; 1 R. C. L. 779, § 6; Federal Land Bank of New Orleans v. Wilson et al., 224 Ala. 491, 141 So. 539; First National Bank of Dothan v. Federal Land Bank of New Orleans, 225 Ala. 195, 142 So. 546.

It is a principle as old as the law, that every legal cause of action in personam arises from a breach of contract, or the commission of a tort. The principle is thus stated by Street in his Foundations of Legal Liability: "The expression in personam is said to be abridged from in personam certam sive determinatam. At any rate the obligation in causes of actions in personam exists against a definite person, a person ascertained either by the fact that he has made a contract or has done an act which constitutes a delict or tort. * * * No one could fail to grasp the conspicuous truth that the personal actions lie to enforce obligations arising against a definite person out of a contract or tort." Vol. III, Street on Foundations of Legal Liability, pages 38, 39.

The text in Corpus Juris states the principle: "In order to give rise to a cause of action there must be a violation of some positive legal right, a right such as the law recognizes as a proper subject for judicial enforcement or redress. Violations of merely moral duties or obligations are not actionable. * * * On the other hand, however, the violation of a legal right gives a cause of action, whether the right is violated by the commission of a tort, or by the breach of contract. 1 Corpus Juris, pages 952–3, § 48.

■ However, an express contract is not always essential to a cause of action ex contractu. Privity of contract may arise by implication of law, and where the defendant has received money, or property, the equivalent of money, which ex æquo et bono belongs to the plaintiff, and in receiving the money or property definitely assumes to cancel or dispose of property rights, for which by contract or liability, legal or equitable, the party from whom it is received is liable to the plaintiff, the privity arises out of the duty of the defendant to account to the plaintiff, and he may maintain the equitable action for money had and received. A. Paul Goodall Real Estate & Insurance Co. v. North Birmingham American Bank, 225 Ala. 507, 144 So. 7; Allen v. M. Mendelsohn & Son, 207 Ala. 527, 93 So. 416, 31 A. L. R. 1063.

■■ The letting of the premises by the executrix of the mortgagor was not only subsequent to the execution of the mortgage, but was after the maturity of the mortgage debt. The maturity of the mortgage debt and the mortgagor's default discharged the mortgage of its conditions, and the estate of the mortgagee, in law, became absolute, and investing it with the right of immediate possession, leaving in the mortgagor and his heirs and personal representative nothing but the equity of redemption; and the persons then in possession claiming through the rights of the mortgagor were but tenants at sufferance. Farris & McCurdy v. Houston, 74 Ala. 169; Thompson v. Union Warehouse Company, 110 Ala. 499, 18 So. 105; Hughes & Tidwell Supply Co. v. Carr, 203 Ala. 469, 83 So. 472; First National Bank of Russellville v. Welch, 222 Ala. 144, 132 So. 44; Buchmann et al. v. Callahan, 222 Ala. 240, 131 So. 799; First National Bank of Dothan v. Federal Land Bank of New Orleans, 225 Ala. 387, 143 So. 567.

■ The foreclosure of the mortgage after the crops were planted, and the active steps to intercept the rents, vested in the mortgagee-purchaser at the foreclosure sale the right to the unpaid rents and such as accrued during the tenants' possession for the term as mesne profits for use and occupation. Code 1923, § 7459; Comer v. Sheehan, 74 Ala. 452; Federal Land Bank of New Orleans v. Wilson et al., 224 Ala. 491, 141 So. 539; First National Bank of Dothan v. Federal Land Bank of New Orleans, 225 Ala. 195, 142 So. 546; Federal Land Bank of New Orleans v. Lloyd, 224 Ala. 48, 138 So. 417.

Our statutes, which are in derogation of the common law if crops are sown before notice to quit by a tenant in possession, holding at the will of the owner of the estate, confer on the tenant title to the crops, and provide

146

a remedy in case of proceedings to recover possession by an action of ejectment or by judicial sale, by which the tenant may retain possession until the crops are gathered upon giving security for the rent; but they do not relieve the tenant from the duty and obligation to pay the owner of the dominant estate mesne profits as compensation for use and occupation. Code 1923, §§ 6660, 7472, 8798; Scott et al. v. Colson et al., 156 Ala. 450, 47 So. 60; Federal Land Bank of New Orleans v. Wilson et al., supra; American Freehold Land Mortgage Co. v. Turner, 95 Ala. 272, 11 So. 211; Lamar v. Johnson, 16 Ala. App. 648, 81 So. 140; Buchmann v. Callahan, 222 Ala. 240, 131 So. 799.

The statute, Code 1923, § 8820, subd. 4, in cases where the owner of the land is entitled to recover for use and occupation, gives him a lien on the crops "to the same extent as the landlord has under section 8799 (4734), or section 8814 (4747)," with the same remedies for its enforcement.

A cursory examination of the statute might suggest that the lien therein provided for only applies to cases arising under subsection (4) thereof, where the tenant has gone into possession wrongfully; but upon a more careful examination of its genesis and its arrangement in the Code of 1907 (section 4753), the legislative intent clearly appears as above stated.

This lien is superior to liens created by the tenants on the crops prior to the foreclosure. First National Bank of Dothan v. Federal Land Bank of New Orleans, 225 Ala. 195, 142 So. 546.

And it is well settled that a lienholder, whose lien has been destroyed by an intermeddler, may recover damages in an action on the case for such tortuous destruction. Burton et al. v. Dangerfield, 141 Ala. 285, 37 So. 350; Couch v. Davidson, 109 Ala. 313, 19 So. 507; Hamilton & Canterbury v. Phillips Bros., 120 Ala. 177, 24 So. 587, 74 Am. St. Rep. 29; Smith v. Huddleston, 103 Ala. 223, 15 So. 521; Clark et al. v. Johnson & Lattimer, 7 Ala. App. 507, 61 So. 34. Or, if the intermeddler has disposed of the property covered by the lien for money or its equivalent, may waive the tort and recover in the equitable action for money had and received. Bank of Ramer v. Derden et al., 211 Ala. 666, 101 So. 594; Westmoreland & Trousdale v. Foster, 60 Ala. 448; Thompson v. Merriman, 15 Ala. 166; A. Paul Goodall Real Estate & Ins. Co. v. North Birmingham American Bank, 225 Ala. 507, 144 So. 7.

If it be conceded that the evidence was sufficient to authorize the jury to draw an inference that the cotton and corn received from the defendant were grown on the Strudwick plantation during the year 1930, there is nothing in the evidence showing when defendant received the property, or that he had disposed of it or dealt with it in such sort as to destroy the statutory lien. Non constat, he may have received the property at any time before plaintiff commenced the action, and it was at that time accessible to legal or equitable proceedings for the enforcement of the lien; and, if so, the action for money had and received will not lie. Moody v. Walker, 89 Ala. 619, 7 So. 246; Finney v. Studebaker Corporation of America, 196 Ala. 422, 72 So. 54.

Nor does the case of Walsh v. Bank of Moundville, 222 Ala. 164, 132 So. 52, support the plaintiff's case as made by the evidence. In that case it was shown without dispute that the bank, with notice of the plaintiff's rights, had received money in payment of the rent maturing after the foreclosure of the real estate mortgage.

Therefore, our judgment is that the plaintiff was not entitled to recover on this action, and the affirmative charge was properly given for the defendant.

The evidence offered and rejected had no tendency to cure the defects in plaintiff's case, and, if error was committed in respect thereto, it was clearly without injury.

Affirmed.

ANDERSON, C. J., and THOMAS and FOSTER, JJ., concur.

On Rehearing.

BROWN, J.

The appellant's respectful and earnest insistence, that evidence adduced by it on the trial necessitated a submission of the issues to the jury, and error intervened when the court directed a verdict for the defendant, has impelled us to re-examine the question on the points made by the application for rehearing.

One contention is that courts are bound to take judicial knowledge of the custom that obligations for the payment of rent for farm lands are usually discharged in the early fall, and, although the evidence does not show when the cotton was delivered to the defendant by the tenants on the Strudwick plantation for the year 1930, and this fact being a fact within the knowledge of the defendant, it must be assumed, in the absence of evidence, that the particular cotton was delivered according to the custom in the early fall; and this custom, considered in connection with the fact that defendant, during the fall of 1930, by letters written by its agent and attorney demanding that defendant pay over or deliver the rent received by him from said plantation for said year, to which he made no reply and which he did not deny receiving, was evidence tending to show that the cotton was received by the defendant in the fall of 1930, and that he had disposed of the same, presenting a question for the jury.

While it is well settled, "That courts take judicial knowledge of what everybody else is presumed to know, and juries are permitted to find such fact, without specific proof" (3 Mayf. Dig. page 437, § 3); yet courts do not take judicial knowledge of particular transactions between private parties. Therefore, while it might be permissible for the court to take judicial knowledge of the prevailing custom of the county and the crop seasons (Loeb & Weil v. Richardson, 74 Ala. 311), it was not permissible for the court to take judicial knowledge of a fact that may be disputed by competent evidence, or for the jury to find the fact in the absence of evidence.

Nor do the letters referred to aid the situation. There was no contractual relation between the plaintiff and the defendant. They fall within the general rule, "that a party cannot make evidence for himself by his written communications addressed to the other party, as to the character of dealings with them, or the liability of the party to whom they are addressed, in the absence of any reply assenting to the same." Denson v. Kirkpatrick Drilling Co., 225 Ala. 473, 144 So. 86, 91. Their only evidentiary value was to show that demand was made before suit brought, and its character.

The next contention is that the stipulation of facts shows, that while one of the tenants, Henry Bell, did not pay Smith anything in property or money as rent, it does show that "Taylor, who had taken over and was advancing for the said Henry Bell, took up his rent note and other papers, and paid the said Smith the amount that the said Henry Bell owed; and the said Smith thereupon delivered all of the said Henry Bell's papers to the said Taylor"; and also shows that defendant "received twelve bushels of corn of the value of $6.00 from Bert Lawless and George Duncan, 'said corn having been received by the said Smith as rent,'" and therefore plaintiff was entitled to recover the amounts represented in the transaction between Taylor and defendant, and in the transaction between Lawless, Duncan, and defendant, on the well-settled principle, that where one person tortuously obtains possession of the property of another, and refuses to surrender its possession on demand of the owner, if it be money, may waive the tort and sue for money had and received; or, if it be chattels, he may waive the tort and treat the transaction as a sale and delivery of goods and recover their reasonable market value. Bradfield, Morson & Co. v. Patterson, 106 Ala. 397, 17 So. 536; First National Bank of Decatur v. Henry, 159 Ala. 367, 49 So. 97; Note 17 Ann. Cas. 975–977.

The clear import of the stipulation of facts as to the transaction between Taylor and the defendant is that Taylor took over Bell's obligation, and the money paid by Taylor to defendant was neither the money of the plaintiff nor Bell; nor was it rent; nor was the corn which Lawless and Duncan delivered to defendant "as rent" the property of the plaintiff. The legal title to the corn, we must assume, was in Lawless and Duncan, and passed to Smith.

The principle invoked here only applies when the defendant tortuously takes property of the plaintiff; that is, property to which plaintiff holds the legal title.

A different rule applies where the plaintiff only has an equitable title or statutory lien. In that case he must show that the equitable title or lien has been destroyed by a disposal of the property, its consumption, or by intermingling so as to destroy its identity. Moody v. Walker, 89 Ala. 619, 7 So. 246; Ehrman v. Oats, 101 Ala. 604, 14 So. 361; McCarty v. Roswald & Co., 105 Ala. 511, 17 So. 120.

The application is overruled.

ANDERSON, C. J., and THOMAS and FOSTER, JJ., concur.