The plaintiff, Yvonne Lee Pitts Spooner, appeals from a summary judgment for the defendants State Farm Mutual Automobile Insurance Company and its claims representative Kevin Smith (we will refer to these defendants as "State Farm"). Spooner sought compensatory and punitive damages based on allegations of fraud. (Spooner also sued Dr. Laurence T. Zottoli, Jr., but he was dismissed.) We reverse and remand.
The standard of review applicable to this case is well settled. See Rule 56(c), *Page 1158 
Ala.R.Civ.P. The summary judgment for State Farm was proper if it clearly appears that there is no genuine issue of material fact and that State Farm is entitled to a judgment as a matter of law. In determining whether there is a genuine issue of material fact, this Court must review the record in the light most favorable to Spooner and must resolve all reasonable doubts against State Farm. Wayne J. Griffin Electric, Inc. v.Dunn Construction Co., 622 So.2d 314 (Ala. 1993).
The evidence, viewed in the light most favorable to Spooner, indicates the following: On August 30, 1990, Spooner suffered personal injuries when the automobile she was driving collided with an automobile driven by Dr. Laurence T. Zottoli, Jr. Spooner's mother, who was a passenger in Spooner's automobile, was also injured. State Farm insured both Spooner and Zottoli; this fact put State Farm in a "double with claim" situation and in a fiduciary relationship with its insureds. State FarmMutual Automobile Ins. Co. v. Ling, 348 So.2d 472 (Ala. 1977). Smith, who was assigned to investigate and adjust Spooner's claim, determined that Spooner was not at fault in the collision. Smith met with Spooner and her mother on October 12, 1990, and issued checks to them for the medical bills they had incurred. Smith also issued a check to Spooner to cover expenses for repairing her automobile. State Farm paid the medical bills under the medical payments coverage provided by Spooner's policy; it paid for Spooner's property damage under the liability coverage provided by Zottoli's policy. In addition, Smith issued checks to Spooner and her mother to compensate them for their pain and suffering caused by the accident, under the liability coverage provided by Zottoli's policy. During the course of the October 12 meeting, Smith asked for and obtained a signed general release from Spooner's mother, releasing Zottoli from all liability resulting from the accident. Smith also asked for and obtained a release from Spooner, after representing to her that she was only releasing Zottoli from any liability for her property damage. The release signed by Spooner is not in the record. Smith, in deposition, testified that Spooner signed a general release similar to the one signed by Spooner's mother. Spooner testified in her deposition as follows:
 "Q. Do like you did on the earlier meeting and tell me in substance what you can recall was said by Kevin Smith, [your mother], or you at that meeting.
 "A. Okay. Of course, we both had the bills that we took him that if I recall correctly were emergency room bills, . . . bills that we had from Baptist Hospital. We were submitting those. Also, was talking [sic] about my van had been repaired, about what I needed to do to get the van. How the body shop owner should be paid.
 "At that time, Kevin Smith inquired and asked my mom about her medical injuries, if she was having any other problems, if she could foresee having any other problems related to this accident.
"Q. How was she doing?
 "A. She was doing good. . . . So at that point, he handed my mom a medical release form, okay, had her look it over, okay, and handed me a release form which I was under the assumption . . . was a property damage release form that was basically saying that I was going to clear up my car being repaired and all that kind of stuff. And I specifically asked Kevin that day in the office, 'Now this is not a medical release form releasing Dr. Zottoli?' And he said, 'No, no, no.' Because I looked at him and I said, 'Because I'm still having problems.' He said, 'No, no.' He said 'He's liable for 3 years, you know, he's up to three years for medical bills submitted, we wouldn't dare ask you to sign something like that right now because we know that you're still having problems.' He said, 'But now with your mom, we are asking her to sign a medical release form.' Because even my mom reiterated and she, before she let me sign it said, 'Now, are you for sure this is — she's not signing the same thing as I'm signing?' and Kevin said, 'No, she's signing another release form.'
 "So, you know, at that particular meeting, I was under the assumption that, yes, my mom was signing a medical release form and he wanted her to go ahead and sign that and get it wrapped up so they *Page 1159 
could close Dr. Zottoli's file out so he could go on with his life. In fact, he used those words, 'he could go on with his life,' you know. And was having me sign what I assume was a property release, damage release form to wrap that up.
". . . .
 "Q. Did Mr. Smith tell you that it was releasing only your property damage claim?
 "A. Yes, that it would be wrapping up, that I was satisfied with my van repairs and stuff.
 "Q. Did he tell you that you would be releasing any further claims that you would have against Dr. Zottoli?
"A. No.
". . . .
 "Q. Did he tell you that you could submit medical bills to be paid for up to three years after the accident?
"A. Yes, he did.
 "Q. Did he tell you which policy those bills would be paid under?
"A. No, he did not.
 "Q. Was there any discussion about your right to receive any later payments for pain and suffering and that type thing?
"A. No.
 "Q. And you said that you told Kevin that you were still having problems?
 "A. Oh, yeah, definitely, because I was still going to the doctor and I said 'This is not a medical release form, right, because I'm still having problems, I'm still going to the doctor.' And he said, 'No, no, no.'
 "Q. And by 'medical release,' you mean releasing any claims for your injuries?
 "A. Right. And that's — of course, in my mind, that's, you know, I'm thinking Dr. Zottoli is taking care of all of this, you know, I was talking in that aspect, releasing him. Because I even said, 'Now, I'm not releasing the doctor from all this, right? and he said, 'No, you're not, that's not what this is.' Because me and my mom both point blank was asking Kevin to make sure that that's not what I was signing.
". . . .
 "Q. . . . But it was your understanding in the October meeting that you were signing a release for your property damage, correct?
"A. Right. Correct.
 "Q. And that you could come back later and make a claim against Dr. Zottoli —
"A. Oh, yes.
"Q. — for any medical bills you might have?
"A. Yes.
"Q. Pain and suffering?
"A. Yes.
"Q. Any other damages?
"A. Yes."
Smith further told Spooner that she would have a claim against Zottoli for three years from the date of the accident. Smith did not inform Spooner that, in fact, Alabama has a two-year statute of limitations applicable to a damages action against Zottoli. See Ala. Code 1975, § 6-2-38(l). Smith did not tell Spooner that her medical bills were being paid under the medical payments coverage provided by her policy or that she might be able to recover additional compensation from Zottoli, i.e., compensation for emotional distress, compensation for loss of wages, additional compensation for pain and suffering, etc.
State Farm eventually refused to renew Spooner's policy; however, nothing in the record substantiates Spooner's claim that it refused renewal because it had paid Spooner over $30,000 in medical payments under the medical payments provision of her policy. During a conversation concerning Spooner's health insurer's possible subrogation rights to payments she had received from State Farm, Smith told Spooner that she had released Zottoli from all liability "a long time ago." Spooner testified that Smith's actions had caused her emotional distress:
 "Q. You're making a claim against Dr. Zottoli in this lawsuit for pain and suffering, am I correct?
"A. Yes.
 "Q. And if you try the case and the jury gives you an award, you will have *Page 1160 
been compensated for your pain and suffering, won't you?
"A. Physical, yeah.
 "Q. Well, you've made a claim against Dr. Zottoli, I assume, for any mental anguish that you've suffered as a result of the accident.
 "A. But I also have suffered a lot of mental anguish from State Farm. In fact, I would say I've suffered more mental anguish from State Farm than I have with Dr. Zottoli.
 "Q. And that's because of all the things you listed for me about not being able to trust anybody, being asked to sign something and told that it was something else, and that type of thing?
 "A. That, plus all the headaches [involved in the alleged delay in paying certain medical bills]."
Upon being told that she had signed a general release, Spooner sought legal advice. She filed this action more than three years after the accident, also naming Zottoli as a defendant and seeking damages from him for negligence or wantonness in connection with the accident. State Farm did not raise the statute of limitations or the general release as an affirmative defense to Spooner's claims against Zottoli. Spooner later settled her claims against Zottoli, and he was dismissed from this action by stipulation of the parties.
Spooner's fraud claims were based on allegations that Smith had suppressed the fact that her claim against Zottoli was subject to a two-year statute of limitations; the fact that she might be able to recover additional compensation from Zottoli for pain and suffering, emotional distress, etc.; and the fact that her medical bills were being paid under her own medical payments coverage. She further alleged that Smith had misrepresented to her that she had three years from the date of the accident to make a claim against Zottoli and that the release she signed applied only to her claim for property damages. Spooner contends that the evidence created questions for a jury to decide as to whether Smith misrepresented or suppressed material information and, if so, whether she relied on Smith's actions to her detriment. According to Spooner, State Farm's status as both her insurer and Zottoli's insurer presented a conflict of interest. She argues that a jury could reasonably conclude from the evidence that Smith intentionally defrauded her in an attempt to limit State Farm's financial responsibility under Zottoli's liability coverage and that she suffered emotional distress as a result of that fraud. She also argues that State Farm's decision not to renew her policy was the result of her medical bills being paid under the medical payments coverage in her policy. State Farm argues that because Spooner was able to sue Zottoli and obtain a settlement of her claims against him, she cannot prove that she relied on anything that was or was not said by Smith or that she was damaged in any way as the result of his conduct.
After examining the evidence and considering the arguments, we conclude that there are genuine issues of material fact to be resolved by a jury and, therefore, that the summary judgment was improper. In Boswell v. Liberty National Life Ins. Co.,643 So.2d 580, 581 (Ala. 1994), this Court noted the well-established elements of causes of action based on misrepresentation and suppression:
 "To establish a prima facie case of fraudulent misrepresentation, a plaintiff must show: (1) that the representation was false, (2) that it concerned a material fact, (3) that the plaintiff relied on the false representation, and (4) that actual injury resulted from that reliance. § 6-5-101, Ala. Code 1975; Crowder v. Memory Hill Gardens, Inc., 516 So.2d 602 (Ala. 1987); International Resorts, Inc. v. Lambert, 350 So.2d 391 (Ala. 1977).
 "To support a claim alleging suppression of a material fact, a plaintiff must show: (1) that the defendant suppressed a material fact, (2) that the defendant had a duty to communicate that material fact, either because of a confidential relationship between the parties, or because of the particular circumstances of the case, and (3) that the plaintiff suffered actual injury as a result of the suppression. § 6-5-102, Ala. Code 1975; Crowder, supra; Chapman v. *Page 1161 Rivers Construction Co., 284 Ala. 633, 227 So.2d 403 (1969)."
Spooner presented sufficient evidence tending to show that Smith failed to inform her that the two-year statute of limitations applied to her claim against Zottoli. Smith was under a legal duty to make this material disclosure, seeState Farm Mutual Automobile Ins. Co. v. Ling, supra, and she presented sufficient evidence that she relied on Smith's silence by not suing Zottoli within two years from the date of the accident. Likewise, there is sufficient evidence tending to show that Smith misrepresented that Spooner had three years to sue Zottoli and that he misrepresented the nature of the release signed by Spooner. There is sufficient evidence that, in reliance on Smith's misrepresentations, Spooner signed a general release, believing all the while that she was releasing Zottoli only from further liability for property damage. State Farm's strongest argument in support of the summary judgment is that Spooner could not prove that she suffered any compensable damage 1) because she was able to file an action against Zottoli and to ultimately settle her claims against him (as a result of State Farm's decision not to raise the statute of limitations or the general release as affirmative defenses) and 2) because State Farm had a legal right not to renew her policy. State Farm insists that no evidence connects any fraud on Smith's part to the nonrenewal of Spooner's policy. We find State Farm's argument only partially persuasive. We agree that Smith's actions did not prevent Spooner from obtaining additional compensation from Zottoli and that there is insufficient evidence for one to infer that State Farm's decision not to renew Spooner's policy was the result of fraud on State Farm's part. However, Spooner testified that she had also suffered emotional distress as the result of Smith's handling of her claim. Emotional distress is compensable in a fraud action. See, e.g., First Commercial Bank v. Spivey,694 So.2d 1316 (Ala. 1997). We fail to see how State Farm's decision to waive the two potential affirmative defenses to Spooner's action against Zottoli could completely erase the emotional distress Spooner says she had suffered as a result of the uncertainty surrounding her claims against Zottoli from the time that she was informed that she had signed a general release and the time that she determined that she had only two years to file a claim against Zottoli, until State Farm waived the defenses of the release and the statute of limitations. The extent of that emotional distress, if any, would be for a jury to determine. This Court has stated that "once a fraud has been committed, the perpetrator cannot 'take it back' or cover it up by his subsequent actions. . . . Once a fraud has been accomplished, subsequent actions cannot completely erase the injury done to the person against whom the fraud was committed." Boswell v. Liberty National Life Ins. Co., supra, 643 So.2d at 584. It is for a jury to determine if the defendants made a misrepresentation and/or a suppression; if so, whether Spooner relied on it; and, if so, whether that misrepresentation and/or suppression proximately caused Spooner to suffer emotional distress. State Farm Mutual AutomobileInsurance Co. v. Ling, supra.
The judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HOOPER, C.J., and ALMON, COOK, and SEE, JJ., concur.