883 So.2d 1247 (2003)
Carolyn NOBLES-HAMILTON
v.
Steve THOMPSON.
2010740.
Court of Civil Appeals of Alabama.
January 31, 2003.
Certiorari Quashed January 16, 2004
*1248 James W. Cameron of Cameron & Cameron, Montgomery, for appellant.
Raymond Johnson, Montgomery, for appellee.
Alabama Supreme Court 1020759.
CRAWLEY, Judge.
Carolyn Nobles-Hamilton was employed at Health Wise, a health-food store located in the Village East shopping center on the Atlanta Highway in Montgomery, until August 31, 2000. She had worked at the store for approximately 14 years. In 1988, the owner of Health Wise, Mitch Freeland, sold the store to Steve Thompson. Thompson continued to employ Nobles-Hamilton, but he requested that she sign an employment contract containing a noncompetition agreement, which read as follows:
"Item Seven

"The employee agrees not to open a competing business, or to be employed by a competing business, for a period of three years after her employment at Health Wise terminates. Further, employee agrees not to divulge any trade secrets or operating procedures of Health Wise to any person, or to ever use any customer list of Health Wise or to solicit any Health Wise customers away from Health Wise."
When Health Wise's profits declined in the summer of 2000, Thompson discussed the matter with Nobles-Hamilton and, according to his testimony, explained that she would have to become a part-time employee if the profits did not increase. He said that Nobles-Hamilton informed him that part-time employment would not be sufficient to cover her living expenses, so, he said, he told her to start looking for other employment in the event that the profits did not improve. In August 2000, Thompson informed Nobles-Hamilton by letter that she would be terminated at the end of the month.
Some time shortly after her termination, Nobles-Hamilton decided to open her own health-food store, Health Source, in an empty portion of the Nobles Glass building, which is owned by her parents. Health Source is located on Burbank Drive, which intersects with the Atlanta Highway. In September 2000, after Nobles-Hamilton's employment had been terminated, Thompson and his daughter ate a meal at a drive-in restaurant on the corner of Burbank Drive and the Atlanta Highway. As he returned to Health Wise, Thompson drove down Burbank Drive and past the Nobles Glass building. Thompson noticed Nobles-Hamilton's automobile in front of the building and noticed that Nobles-Hamilton was putting up shelves in the empty portion of the building. The next evening, Thompson stopped at the Nobles Glass building to see what items might be on the shelves he saw Nobles-Hamilton installing. According to Thompson, the shelves contained health-food products that are also sold at Health Wise.
Thompson sued Nobles-Hamilton, alleging that she had breached the noncompetition agreement in her employment contract and that she had interfered with his business relationships with his customers. Nobles-Hamilton filed a motion for a summary judgment, arguing that the noncompetition agreement was void because it lacked a definite geographical limitation. The trial court denied her motion, and the case proceeded to a jury trial.
At trial, the basic issues were whether Nobles-Hamilton had signed the employment contract containing the noncompetition *1249 agreement, whether she had breached that agreement, whether she had interfered with Thompson's business relationships with his customers, and, if she had breached the agreement or interfered with those business relationships, what, if any, damage her actions had caused Thompson. The jury found in Thompson's favor, awarding him $30,000 in damages. After the trial, the court granted Thompson's request for an injunction preventing Nobles-Hamilton from operating Health Source or any other health-food store within a five-mile radius of Health Wise for the balance of the three-year term provided for in the noncompetition agreement. Nobles-Hamilton appeals, arguing that the noncompetition agreement was void because it did not include a specific geographical limitation; that the noncompetition agreement was void in that Thompson did not have a protectible interest because at the end of her employment Nobles-Hamilton essentially only "ran the cash register"; and that the trial court erred in making a new contract for the parties by supplying a missing terma geographical limitation. She does not raise any arguments concerning the intentional-interference-with-business-relations claim.
The thrust of Nobles-Hamilton's argument is that the noncompetition agreement does not comply with Ala.Code 1975, § 8-1-1, because it does not contain a definite geographical limitation. Thompson argues, however, that the geographical limitation is contained within the term "competing," thus precluding Nobles-Hamilton from opening a store or being employed at a store that would compete with Health Wise for the same customer base. See Parker v. EBSCO Indus., Inc., 282 Ala. 98, 100-01, 209 So.2d 383, 384-85 (1968) (affirming the enforcement of a noncompetition agreement that did not contain a specific geographical limitation; the trial court ordered that the former employee not solicit established customers of the employer or induce other employees of the employer to leave their employment for a one-year period). Additionally, Thompson argues that the trial court, under its broad equitable powers, has the right to restrict the time limitation or the geographical limitation contained in the noncompetition agreement to a more reasonable one as appropriate under the circumstances of the individual case rather than declaring the entire noncompetition agreement void. See Mason Corp. v. Kennedy, 286 Ala. 639, 645, 244 So.2d 585, 590 (1971). Nobles-Hamilton disagrees, arguing that supplying a missing but required term is not the same as limiting an existing term in order to make the agreement reasonable under the law.
Although noncompetition agreements are not favored, see Ala.Code 1975, § 8-1-1(a), an "employee may agree with his employer to refrain from carrying on or engaging in a similar business and from soliciting old customers of such employer within a specified county, city, or part thereof so long as the ... employer carries on a like business therein." Ala.Code 1975, § 8-1-1(b). Our courts, in interpreting that statute, have developed a test to determine whether a given noncompetition agreement is enforceable. A court will enforce a noncompetition agreement only if:
"(1) the employer has a protectable interest;
"(2) the restriction is reasonably related to that interest;
"(3) the restriction is reasonable in time and place;
"(4) the restriction imposes no undue hardship."
DeVoe v. Cheatham, 413 So.2d 1141, 1142 (Ala.1982). "The burden is upon the person or entity seeking to enforce a contract *1250 which restrains a lawful trade or business to show that it is not void under § 8-1-1." Calhoun v. Brendle, Inc., 502 So.2d 689, 693 (Ala.1986).
We first address whether Thompson has proven that he has a protectible interest. Although the evidence indicates that near the end of her employment with Health Wise Nobles-Hamilton's duties were restricted mainly to running the cash register and to waiting on customers when she had previously been responsible for ordering products and dealing with representatives of the various suppliers with which Health Wise did business, the protectible interest that Thompson mainly sought to protect was Health Wise's customer relationships. Nobles-Hamilton is correct in arguing that a simple labor skill is not a protectible interest under the law governing noncompetition agreements. See DeVoe, 413 So.2d at 1143 ("A simple labor skill, without more, is simply not enough to give an employer a substantial protectable right unique in his business."). However, employees who have access to customer lists and who develop close relationships with the customers of their employers have repeatedly been restrained from entering into competition with their employers because the customer base is a protectible interest. Id.; Clark v. Liberty Nat'l Life Ins. Co., 592 So.2d 564, 566 (Ala.1992).
The testimony at trial reflects that Nobles-Hamilton had a long history of maintaining relationships with many Health Wise customers. Thompson testified that he had, on several occasions, "staked-out" Health Source. He said he had observed several customers he recognized as being customers of Health Wise enter Health Source and purchase items. Although he testified that he could not remember all of those customers by name, he did identify by name four such customers. He also testified concerning the typical monthly purchases those customers had made at Health Wise in the months preceding the opening of Health Source in September 2000, and he presented documentary evidence in support of his testimony. Thus, Nobles-Hamilton's knowledge of and relationship with Health Wise customers benefitted her by allowing her to solicit those customers. Accordingly, we find that Thompson proved that he had a protectible interest.
Nobles-Hamilton's other arguments are interrelated, so we will discuss them together. She argues that the noncompetition agreement is void because it does not have a geographical limitation and that, in supplying such a limitation in the order issuing the injunction, the trial court impermissibly supplied a term missing from the parties' contract, in essence, creating for the parties a contract that did not exist. Although a trial court cannot supply the terms of a contract for the parties, see generally Dawkins v. Walker, 794 So.2d 333, 339 (Ala.2001), and Estes v. Monk, 464 So.2d 103, 105 (Ala.Civ.App.1985), we do not agree that the trial court in this case did so. We also do not agree that an essential term was missing from the noncompetition agreement.
Thompson testified that he construed the term "competing" as used in the agreement to mean a business actually competing for the same customers in the Montgomery area (an area that, according to Thompson, includes, for example, Prattville and Wetumpka). Therefore, he indicated that he felt the agreement was limited to the area surrounding Montgomery. We agree that the term "competing" is somewhat ambiguous and that it could be construed so as to include a geographical component. Thus, the agreement could be construed to prevent Nobles-Hamilton from operating a competing health-food store in an area in which she would be *1251 soliciting customers from Health Wisean area that, based on the evidence, exceeded the five-mile radius the trial court placed in the injunction. See Clark v. Liberty Nat'l Life Ins. Co., 592 So.2d 564, 566 (Ala.1992) (holding that a noncompetition agreement precluding a former insurance agent from soliciting or writing insurance for any of the company's policyholders whom he had serviced or of whom he was made aware through his employment was reasonable in "place," although no specific "place" was specified, because the territory covered by a noncompetition agreement can be all or part of Alabama or even extend outside Alabama, as the circumstances dictate).
In addition, a fair reading of the contract here could equally compel the conclusion that Nobles-Hamilton could not open a competing business, i.e., a health-food store, anywhere for a period of three years after her termination. Such a broad noncompetition agreement would almost surely be held to be unreasonable. See generally James S. Kemper & Co. Southeast, Inc. v. Cox & Assocs., Inc., 434 So.2d 1380, 1384 (Ala.1983) (commenting that the restriction must be reasonably related to the interest to be protected and specifically noting that the noncompetition agreement at issue in that case was "reasonably relate[d] to the protection of [the employer's] interest in a narrow, identifiable group of clients and potential clients"). The trial court certainly had the power to enforce such an overly broad agreement by limiting the geographical restriction to a more reasonable distance so as to fairly protect the interests of both Thompson and Nobles-Hamilton. Mason Corp. v. Kennedy, 286 Ala. 639, 645, 244 So.2d 585, 590 (1971).
Accordingly, we affirm the judgment entered on the jury verdict in favor of Thompson. We also affirm the trial court's decision to limit the noncompetition agreement to a five-mile radius of the Health Wise store. The evidence clearly supports the fact that the proximity of the stores and Nobles-Hamilton's knowledge of the health-food business and her knowledge regarding Health Wise customers have contributed to the loss of profits Health Wise has suffered since Health Source opened.
AFFIRMED.
PITTMAN, J., concurs.
MURDOCK, J., concurs in the result.
YATES, P.J., and THOMPSON, J., dissent.
YATES, Presiding Judge, dissenting.
I believe the trial court erred in arbitrarily inserting a geographical limitation in the noncompetition clause at issue in this case. Therefore, I must respectfully dissent.
Contracts in restraint of employment are disfavored "`because they tend not only to deprive the public of efficient service, but [also] tend to impoverish the individual.'" James S. Kemper & Co. Southeast v. Cox & Assocs., Inc., 434 So.2d 1380, 1384 (Ala.1983)(quoting Robinson v. Computer Servicenters, Inc., 346 So.2d 940, 943 (Ala.1977)).
Section 8-1-1, Ala.Code 1975, provides, in pertinent part:
"(a) Every contract by which anyone is restrained from exercising a lawful profession, trade, or business of any kind otherwise than is provided by this section is to that extent void.
"(b) One who sells the good will of a business may agree with the buyer and one who is employed as an agent, servant or employee may agree with his employer to refrain from carrying on or *1252 engaging in a similar business and from soliciting old customers of such employer within a specified county, city, or part thereof so long as the buyer, or any person deriving title to the good will from him, or employer carries on a like business therein."
Courts will enforce a noncompetition clause that fits within the exception of § 8-1-1(b) only if:
"(1) the employer has a protectable interest;
"(2) the restriction is reasonably related to that interest;
"(3) the restriction is reasonable in time and place; [and]
"(4) the restriction imposes no undue hardship [on the employee]."
DeVoe v. Cheatham, 413 So.2d 1141, 1142 (Ala.1982).
The person or entity seeking to enforce the agreement has the burden of showing that it is not void under § 8-1-1. Calhoun v. Brendle, Inc., 502 So.2d 689, 693 (Ala.1986). An agreement limiting competition must strictly comply with the requirements of § 8-1-1. Construction Materials, Ltd., Inc. v. Kirkpatrick Concrete, Inc., 631 So.2d 1006 (Ala.1994).
In the present case, the restriction is not enforceable because the noncompetition clause, which Thompson drafted, contained no geographical limitation. The lack of the geographical restriction was not remedied by the trial court's insertion of such a restriction in its injunction. I note that this is not a situation where the trial court narrowed an unreasonable territorial restriction, Kershaw v. Knox Kershaw, Inc., 523 So.2d 351 (Ala.1988), or where the counties from which the employee was restricted were identifiable by the remainder of the contract, Clark v. Liberty Nat'l Life Ins., Co., 592 So.2d 564 (Ala.1992). The failure to include any geographical term, as statutorily required, is, in my opinion, fatal to the noncompetition clause.
Because I believe the noncompetition clause is unenforceable as written, I would hold that Thompson may not recover monetary damages for the breach of the noncompetition clause nor could Nobles-Hamilton be enjoined from operating her store. Also, the second claim asserted by Thompson interference with business relationsis not a viable claim, in light of the fact that the covenant not to compete is itself unenforceable by Thompson. Construction Materials, supra.
THOMPSON, J., concurs.