925 So.2d 166 (2005)
WESTWIND TECHNOLOGIES, INC.
v.
Matthew C. JONES.
1040101.
Supreme Court of Alabama.
September 23, 2005.
*167 John A. Wilmer, Richard J.R. Raleigh, Jr., and Rachel M. Howard of Wilmer & Lee, P.A., Huntsville, for appellant.
Preston S. Trousdale, Jr., of Jones & Trousdale, P.C., Florence, for appellee.
HARWOOD, Justice.
This is an appeal, pursuant to Rule 4(a)(1)(A), Ala. R.App. P., from an order dismissing a claim for injunctive relief. We reverse and remand.
Westwind Technologies, Inc. ("Westwind"), is the plaintiff in an action pending in the Madison Circuit Court against Aerospace Integration Corporation ("AIC"), B. Rebecca Ulman, Matthew C. Jones, and Frank Deluca. The three individual defendants are all former employees of Westwind who went to work for AIC. Westwind's complaint, as last amended, alleged that the individual defendants had breached "the Nondisclosure, Noncompetition & Nonsolicitation Agreement" they *168 had entered into with Westwind; it sought monetary damages and asked the court to enter preliminary and permanent injunctions prohibiting the individual defendants from continuing their employment with AIC, from seeking employment with other competitors of Westwind, and from continuing to breach the agreement. Concerning its business and the nature of the individual defendants' employment with it, Westwind alleged that it is "a corporation doing business in Madison County, Alabama that provides aviation technology and hardware solutions as well as other engineering and technology services to the aerospace industry and military." The complaint alleges that one of Westwind's primary customers is the United States Army and, in particular, the Army's Aviation Branch ("Army Aviation"). Westwind alleges in its complaint that approximately 80 percent of its business is Army Aviation contract work and, as to that work, the majority of Westwind's customers are located at Redstone Arsenal in Madison County. The complaint alleges that Jones, along with Ulman and Deluca, had performed work for Westwind on Army Aviation contracts and subcontracts and that, in connection with his subsequent employment with AIC, Jones was cultivating a continuing relationship with Army Aviation and was "seeking government contracts work for AIC with Army Aviation." Jones's job with Westwind had essentially been marketing; according to the allegations of the complaint, he was hired by AIC "to market AIC to Westwind's customer, Army Aviation." Westwind further alleges in its complaint that, in connection with his employment with Westwind, Jones had gained knowledge about its business plan, customers, customer list, competitive strategy, and other internal information. All averments of the complaint were verified under oath by Michael Newton, the senior vice president and chief financial officer of Westwind.
Jones filed a motion to dismiss or, in the alternative, for a judgment on the pleadings, asserting that Westwind's complaint failed to demonstrate that it was entitled to injunctive relief and that Jones was entitled to judgment as a matter of law on the claim for injunctive relief. The motion, which was unverified, confirmed that Westwind's primary customer was Army Aviation and asserted that Jones had worked for Westwind from September 16, 2002, to October 15, 2003, "in the field of aviation procurement and acquisitions," but that he had "worked exclusively with Army Aviation" since 1990; he left Westwind to go to work for AIC. The motion further asserted that "[t]he sole hub of procurement and acquisitions for Army Aviation is the Redstone Arsenal, Madison County, Alabama."
Attached to the motion as an exhibit was the agreement between Westwind and Jones; the agreement was also attached to Westwind's complaint. The motion pointed out that the covenant not to compete included in the agreement ("the noncompetition clause") forbade Jones from competing with Westwind in the "territory," through any of several specified modes or capacities, for a period of one year following the termination of his employment with Westwind. The term "territory" was defined in the agreement to "mean the entire World including every county, territory, state, province, county and city located within the World." The motion also noted that the noncompetition clause provided further that
"[i]n the event that the provisions contained in this Section shall ever be deemed to exceed the time or geographic limits or any other limitations permitted by applicable law in any jurisdiction, then the court making such determination *169 shall have the power to reduce the duration or limit the geographic scope (or otherwise limit the scope) to the extent it deems reasonable under the circumstances and such provision in its reduced or limited form, shall then be enforceable."
Jones argued in his motion that the noncompetition clause should not be enforced because, he said, 1) Westwind had failed to demonstrate a protectible interest and had failed to demonstrate that the restriction on competition was reasonably related to a protectible interest, 2) the geographic scope of the noncompetition clause was not reasonable, 3) the effect of the noncompetition clause was "to blanketedly [sic] forbid [Jones] from working in any capacity in the aviation procurement and acquisition field," and 4) enforcement of the restriction would work "an undue hardship" on Jones.
Westwind filed a lengthy response to Jones's motion, arguing, among other things, that the government-contracting industry was a "small place" even if geographically it might include the entire world, but that, at any rate, "it is clear that a trial court has power to enforce an overly broad noncompetition agreement by limiting the geographical restriction to a more reasonable distance so as to fairly protect the interest of both employer and former employee," citing Nobles-Hamilton v. Thompson, 883 So.2d 1247 (Ala.Civ.App. 2003).
On September 3, 2004, after hearing argument of counsel, the trial court entered an order in which it declared the noncompetition clause "invalid and unenforceable" because the geographic scope of the noncompetition clause was "unreasonable and unenforceable." The court mistakenly ordered, however, that it was entering a judgment on the pleadings in favor of Jones against Westwind "on all claims," directing that a final judgment be entered in that regard. Westwind timely moved the court to alter, amend, or vacate the order, pointing out that the court should not have dismissed Westwind's breach-of-contract claim against Jones and arguing that the geographic scope of the noncompetition clause was expressly amenable under the contract to contraction to a reasonable area. Westwind cited two Florida District Court of Appeals cases addressing covenants not to compete, Health Care Financial Enterprises, Inc. v. Levy, 715 So.2d 341 (Fla.Dist.Ct.App.1998), and Open Magnetic Imaging, Inc. v. Nieves-Garcia, 826 So.2d 415 (Fla.Dist.Ct.App. 2002), in which the appellate court reversed the judgment of the trial court on the basis that the trial court had failed to narrow the geographic scope of a noncompetition clause to a reasonable area and then to enforce it as modified.
Jones filed a response to Westwind's motion to alter, amend, or vacate, arguing that the Florida cases did not represent the law in Alabama and that whether to modify a covenant not to compete should rest in the sound discretion of the trial court. Jones argued that Westwind had offered no guidance as to what geographic scope, as an alternative to the "world," it would consider reasonable but noted that presumably "Westwind would be satisfied blue penciling Mr. Jones out of the Redstone Arsenal, the sole hub of procurement and acquisitions for Army Aviation." Jones asserted that "[t]he effect of such a blue line would be to preclude Mr. Jones from plying the only trade with the only customer he has ever known and the only place he has ever worked. From a factual standpoint, one can only imagine the hardship that such a restriction would work on Mr. Jones."
On October 5, 2004, the trial judge entered an order amending its September 3 *170 order in several respects. First, it noted that it was granting Jones's motion to dismiss, not his motion for a judgment on the pleadings, and did so only with respect to the claim for injunctive relief; it denied the motion to dismiss as it pertained to Westwind's claim for monetary damages based on the alleged breach of contract. In the part of the order most pertinent to our analysis and disposition of the issue raised on this appeal, the court stated:
"The Court, at the suggestion of [Westwind], does acknowledge the existence of the blue-penciling or re-writing clause in the Agreement signed by the defendant, Matthew Carter Jones. However, the Court has also taken consideration of the nature of the government contracting industry. Redstone Arsenal is the sole hub of procurement and acquisitions for Army Aviation. Thus enforcement of the non-compete agreement under the existing circumstances completely restricts [Jones's] practice of trade. Thus, the Court finds the scope of the non-compete agreement to be all encompassing and unreasonable. The Court further finds that blue-penciling the non-compete agreement to a reasonable scope is a practical impossibility. Therefore, the non-compete agreement for which [Westwind] seeks injunctive relief is found to be invalid and unenforceable. Thus, the Court hereby ORDERS that the Motion to Dismiss be GRANTED as it pertains to injunctive relief enforcing the non-compete agreement against Matthew Carter Jones."
It is to be noted that the pivotal consideration underlying the circuit court's ruling was that "Redstone Arsenal is the sole hub of procurement and acquisitions for Army Aviation." This "finding" by the trial court has no support in the record other than the statements to that effect made by Jones in his unverified motion to dismiss and repeated by him in his unverified response to Westwind's motion to alter, amend, or vacate the September 3 order. It is to be noted that the only pleading before the trial court when it entered its October 5 order was Westwind's complaint as last amended. Jones had not filed an answer and only his motion to dismiss or, in the alternative, for a judgment on the pleadings, was pending. No discovery had been conducted and no evidence, either in the form of an affidavit, a deposition transcript, or otherwise, was submitted by Jones or was otherwise a part of the record when the trial court entered its revised order. Importantly, because of the procedural posture of the case at the time the court ruled, its ruling cannot be viewed as an exercise of its discretion to grant or deny a preliminary or permanent injunction upon a hearing on such a request. The order expressly grants Jones's motion to dismiss and, therefore, is subject to our appellate standard of review for a ruling on a motion to dismiss.
"In Nance v. Matthews, 622 So.2d 297 (Ala.1993), this Court stated the standard of review applicable to a ruling on a motion to dismiss:
"`On appeal, a dismissal is not entitled to a presumption of correctness. The appropriate standard of review under Rule 12(b)(6)[, Ala. R. Civ. P.,] is whether, when the allegations of the complaint are viewed most strongly in the pleader's favor, it appears that the pleader could prove any set of circumstances that would entitle [it] to relief. In making this determination, this Court does not consider whether the plaintiff will ultimately prevail, but only whether [it] may possibly prevail. We note that a Rule 12(b)(6) dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim *171 that would entitle the plaintiff to relief.'
"622 So.2d at 299 (citations omitted)."
Knox v. Western World Ins. Co., 893 So.2d 321, 322 (Ala.2004).
It could not properly be said at the time the trial court entered its October 5 order that Westwind could not possibly prove any set of circumstances that would entitle it to injunctive relief, if the allegations of the complaint are viewed, as they must be, most strongly in Westwind's favor. As noted, the trial court held the view that any attempt by it to exercise the option expressly granted by the agreement to limit the geographic scope of the noncompetition clause to a reasonable area would be a practical impossibility because "Redstone Arsenal is the sole hub of procurement and acquisitions for Army Aviation," so that any enforcement of the noncompetition clause would completely restrict Jones's "practice of trade." The central and pivotal premise of the trial court's rationale, from which all of its other findings and its resulting legal conclusion flowed, was that Redstone Arsenal was "the sole hub of procurement and acquisitions for Army Aviation." As previously explained, however, there is no basis in the record for that finding, other than the unverified assertions of Jones in his motion for a dismissal and in his response to Westwind's motion to alter, amend, or vacate. "`"Motions and arguments of counsel are not evidence." "[S]tatements in motions are not evidence and are therefore not entitled to evidentiary weight."'" Ex parte Coleman, 861 So.2d 1080, 1084 (Ala.2003) (quoting Fountain Finance, Inc. v. Hines, 788 So.2d 155, 159 (Ala.2000)). Thus, the trial court's finding that Redstone Arsenal is the "sole hub of procurement and acquisitions for Army Aviation" completely lacks evidentiary support.
Jones cites Cullman Broadcasting Co. v. Bosley, 373 So.2d 830 (Ala.1979), a case in which this Court reversed the trial court's judgment for denying both injunctive relief and damages, and in which this Court discussed the authority of a court to take judicial knowledge of a matter, obviating the need for evidentiary proof of the matter.
"Courts may take judicial notice of matters of common knowledge without suggestion of counsel, O'Barr v. Feist, 292 Ala. 440, 296 So.2d 152 (1974), and without proof thereof. Green v. Mutual Benefit Health & Accident Ass'n, 267 Ala. 56, 99 So.2d 694 (1957)."
373 So.2d at 832.
A court may take judicial notice of "facts that may be regarded as forming part of the common knowledge of every person of ordinary understanding and intelligence." Independent Life Ins. Co. v. Carroll, 222 Ala. 34, 37, 130 So. 402, 404-05 (1930). Although the activities of Redstone Arsenal in Madison County might well form a part of the common knowledge of every person of ordinary understanding and intelligence in Madison County, whether Redstone Arsenal represents the "sole hub of procurement and acquisitions" for the aviation branch of the United States Army would not be a matter susceptible of such common knowledge.
"[T]his Court has held that a court may not take judicial knowledge of a fact which might be disputed by competent evidence. Connecticut Gen. Life Ins. Co. v. Smith, 226 Ala. 142, 145 So. 651 (1932)." Cullman Broadcasting, 373 So.2d at 832. Westwind asserts in its brief that "if given the opportunity, Westwind could easily prove that the trial court's presumption [that Redstone Arsenal is the sole hub of procurement and acquisitions for Army *172 Aviation] is an incorrect one." (Westwind's brief, p. 32.)
Moreover, the trial court's ruling was in response to a Rule 12(b)(6), Ala. R. Civ. P., motion, i.e., a motion alleging "failure to state a claim upon which relief can be granted"; therefore, the final sentence of Rule 12(b) is implicated:
"If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, [Ala. R. Civ. P.,] and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."
The assertions by Jones in his motion to dismiss and in his response to Westwind's motion to alter, amend, or vacate  that Redstone Arsenal was the "sole hub of procurement and acquisitions for Army Aviation"  clearly represent matters "outside the pleading"; an attempted taking of judicial notice of such a fact by the trial court would likewise be "outside the pleading." In either event, Jones's motion to dismiss would automatically be converted to one for a summary judgment, in which event Jones would have the burden of establishing that there was no genuine issue of material fact and that he was entitled to judgment as a matter of law with respect to the claim for injunctive relief; in determining whether there was a genuine issue of material fact, the court would be obliged to review the record in the light most favorable to Westwind and to resolve all reasonable doubts against Jones. Spooner v. State Farm Mut. Auto. Ins. Co., 709 So.2d 1157, 1158 (Ala.1997). The trial court's order cannot be sustained as a summary judgment because there was no "evidence" of any sort presented by Jones in support of his motion.
Consequently, no matter how the procedural underpinnings of the October 5, 2004, order are viewed, the order cannot be upheld. This Court's conclusion in Cullman Broadcasting is likewise applicable here: "We are convinced that a more extensive presentation of evidence in this case would have benefited both the trial court and this court in determining [the pivotal issue]. . . . On the record before us, we do not believe that the trial court was justified in refusing to enforce this covenant not to compete." 373 So.2d at 835.
For the reasons explained above, we reverse the order of October 5, 2004, and remand the case for further proceedings consistent with this opinion. In that regard, we emphasize that our decision is a function of the narrow procedural issue presented by the record: Whether the order of October 5, 2004, purporting to grant a Rule 12(b)(6) motion to dismiss, is sustainable as such, or, alternatively, whether under Rule 56, Ala. R. Civ. P., the order can be sustained as granting a "converted" motion for a summary judgment based upon the consideration of matters outside of the complaint (the sole pleading), which matters were not presented in any form acceptable under Rule 56. We express no opinion of the view we would take had the trial judge not ruled on Jones's motion to dismiss but instead conducted a hearing on Westwind's request for injunctive relief and then, in the exercise of his sound discretion, ruled on the merits of the request.
REVERSED AND REMANDED.
NABERS, C.J., and STUART and BOLIN, JJ., concur.
SEE, J., concurs specially.
*173 SEE, Justice (concurring specially).
I fully concur in the main opinion. I write specially to emphasize that we are not deciding in that opinion whether the noncompetition clause at issue in this case is overbroad, or, if it is, whether the trial court should narrow the clause or strike it down.
Without expressing a view on this noncompetition clause, I note that the geographic scope of a covenant not to compete is not necessarily overbroad simply because it is worldwide. A court should consider the entire restriction in light of the legitimate interest being protected. 2 Restatement (Second) of Contracts § 188, cmt. d (1981) ("What limits as to activity, geographical area, and time are appropriate in a particular case depends on all the circumstances.").
It is clear from our caselaw that, if a covenant not to compete is overbroad, it is within the power of the courts to narrow it. See Kershaw v. Knox Kershaw, Inc., 523 So.2d 351, 359 (Ala.1988) ("This Court has previously held that when an agreement in restraint of trade contains unreasonable limitations, the court may strike the unreasonable restriction from the agreement, or the court can enforce the contract within its reasonable limits.") (citing Cullman Broad. Co. v. Bosley, 373 So.2d 830 (Ala. 1979), and Daughtry v. Capital Gas Co., 285 Ala. 89, 229 So.2d 480 (1969)).
I believe, however, that there also are times when there is good reason to strike down such a clause. An unreasonably broad noncompetition clause deprives the former employee and his prospective employer of guidance as to what employment is permissible. Therefore, both the former employee and the prospective employer run the substantial risk of litigation if the former employee is hired. See Product Action Int'l, Inc. v. Mero, 277 F.Supp.2d 919, 930-31 (S.D.Ind.2003) (stating that the practice of allowing a court to reform an overbroad noncompetition clause, instead of striking it down, deprives an employee and a prospective employer of guidance as to what is permissible: "A prospective new employer . . . . could not read the [clause] and know what sorts of activity would be prohibited and what would not. . . . A current employee may be frozen in his or her job by an unreasonably broad covenant. Even if the employee believes the covenant is too broad, she may be able to test that proposition only through expensive and risky litigation."). For this reason, some courts refuse to enforce any part of an overbroad noncompetition clause unless the entire clause is reasonable.
Corbin on Contracts describes the judicial options when a covenant not to compete is overbroad:
"[Some] courts interpret or reform the restrictive promise, if possible, so as to make the extent and character of its operation reasonable. Some courts will refuse to enforce any part of the covenant if the covenant was not drafted in the good faith belief that it was valid. Some courts will refuse to enforce any part unless the whole is reasonable. These courts may refuse to partially enforce even when the contract specifically says that it should be partially enforced.
"The approach of enforcing the restriction to the extent it is reasonable is the approach preferred by many modern courts and is in fact a superior approach. To refuse to enforce a covenant entirely, even for a minor deviation from the reasonableness standard, is too harsh a result, given the lack of precision of the reasonableness analysis and the recognized benefit of reasonably restrictive covenants. . . . Courts that have refused to reform covenants not drafted in the good faith belief that the restraint was *174 valid appropriately safeguarded the legitimate interests of the employee."
15 Arthur L. Corbin, Corbin on Contracts § 80.15, at 138-41 (Joseph M. Perillo ed., 2003) (footnote omitted).
The middle view, that a court should in general reform an overbroad noncompetition clause, but should refuse to do so when the clause demonstrably was not drafted in good faith, thus appears to offer a balanced response to the problem of overbreadth. The objection to the practice of partial enforcement is that it tends to encourage employers to insist upon unreasonable restrictions, secure in the knowledge that the promise will be upheld in part, if not in full. See 6 Richard A. Lord, Williston on Contracts § 13.22, at 813-14 (4th ed.1990). However, this problem of intentional overbreadth is addressed by the adoption of the rule that a noncompetition clause, if it is deliberately unreasonable and oppressive, is stricken. Williston § 13.22, at 812-16. The Supreme Court of Alaska has described this approach as follows:
"[I]f an overbroad covenant not to compete can be reasonably altered to render it enforceable, then the court shall do so unless it determines the covenant was not drafted in good faith. The burden of proving that the covenant was drafted in good faith is on the employer. This is the position taken in most United States jurisdictions and by the Restatement (Second) of Contracts § 184(2)."[1]
Data Mgmt., Inc. v. Greene, 757 P.2d 62, 64 (Alaska 1988) (footnotes omitted).
NOTES
[1] 2 Restatement (Second) of Contracts § 184 (1981) states:

"(1) If less than all of an agreement is unenforceable under the rule stated in § 178 [on public-policy grounds], a court may nevertheless enforce the rest of the agreement in favor of a party who did not engage in serious misconduct if the performance as to which the agreement is unenforceable is not an essential part of the agreed exchange.
"(2) A court may treat only part of a term as unenforceable under the rule stated in Subsection (1) if the party who seeks to enforce the term obtained it in good faith and in accordance with reasonable standards of fair dealing."
Thus, the Restatement (Second) of Contracts permits partial enforcement of the overbroad term so long as the party seeking enforcement obtained the term "in good faith and in accordance with reasonable standards of fair dealing." Williston § 13.22, at 813. "This test, or slightly less liberal variations, represents the weight of authority today. . . ." Williston at 813.